UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN DIAMOND, et al.,

    Plaintiffs,                                      Hon. Janet T. Neff

v.                                                     Case No. 1:15-cv-696

CITY OF KALAMAZOO, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 83). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiffs' complaint. (ECF No. 1). On or about July 1, 2013, Plaintiffs resided at 1017 E. Crosstown Parkway, Kalamazoo. On this date, one of Plaintiffs' neighbors assaulted Brieanca Diamond following which Kathy Lang contacted the Kalamazoo Department of Public Safety. Officers were immediately dispatched to Plaintiffs' residence.

Craig Lang, Brieanca Diamond, Ryan Diamond, and Branden Diamond were all subsequently arrested. As part of this process, officers applied "excessively tight handcuffs" to Craig Lang, Ryan Diamond, and Brieanca Diamond. Officer Resseguie also "slammed" Craig Lane "upon two cars." Despite lacking probable cause, Officer Dahlinger requested that Craig Lang be charged with assault and battery and Ryan Diamond and Branden Diamond both be charged with ethnic intimidation.

The Kalamazoo County Prosecutor later initiated the recommended charges, but no convictions were obtained.  On or about July 15, 2013, Kathy Lang was arrested, without probable cause, by Officer Hensel.  Criminal charges were subsequently initiated against Lang, but a conviction was not obtained.

On July 1, 2015, Plaintiff Ryan Diamond, Kathy Lang, Branden Diamond, Brieanca Diamond, and Craig Lang initiated the present action against the City of Kalamazoo and the following individuals: Jon Schipper, Matthew Elzinga, Kelly Pittelkow, Charles Dahlinger , Lindsey Denharder, Gerald Bentley, Stacy Geik, John Resseeguie, John Hurst, Anthony Morgan, and Paula Hensel alleging claims of (1) excessive force; (2) illegal search and seizure, (3) malicious prosecution; (4) failure to train; and (5) false arrest/false imprisonment.  Plaintiff Brieanca Diamond later dismissed her claims and Plaintiffs Ryan Diamond, Branden Diamond, and Craig Lang have dismissed their claims against Defendants Pittelkow, Bentley, Resseguie, Hurst, Morgan, and Hensel.  Plaintiffs Ryan Diamond, Branden Diamond, and Craig Lang have also dismissed their failure to train claims against the City of Kalamazoo.  Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the

non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.      **False Arrest/False Imprisonment**  (Count V)

Plaintiffs Craig Lang, Kathy Lang, Branden Diamond, and Ryan Diamond assert that they were arrested without probable cause thereby subjecting them to false arrest and false imprisonment.

Under Michigan law, false arrest and false imprisonment, while similar are nevertheless distinct torts. *See Moore v. City of Detroit*, 652 N.W.2d 688, 690-91 (Mich. Ct. App. 2002) ("false imprisonment. . .is broader than, but includes, a false arrest involving law enforcement"). The elements of false imprisonment are: (1) an act committed with the intention of confining another; (2) the act directly or indirectly results in such confinement; and (3) the person confined is conscious of his confinement. *Id.* at 691. The "essence of a claim of false imprisonment is that the imprisonment is false, i.e., without right or authority to do so." *Ibid.* A false arrest is simply an "illegal or unjustified arrest" by law enforcement. *See Lewis v. Farmer Jack Division, Inc.*, 327 N.W.2d 893, 894 (Mich. 1982). Where claims of false arrest and false imprisonment are based upon an allegedly improper arrest, Plaintiffs must establish that the arrest was illegal because it was not based upon probable cause. *See*

*Schilbe v. Henry Food Health System*, 2015 WL 6955186 at *2 (Mich. Ct. App., Nov. 10, 2015); *Massa v. City of Livonia*, 2016 WL 399878 at *7 (Mich. Ct. App., Feb. 2, 2016) ("if the arrest was legal, there has not been a false arrest or false imprisonment").

Under Michigan law, probable cause "is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich Ct. App. 2003). Probable cause "is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians." *Id.* at 362-63. Where "the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide." *Id.* at 362.

A.   Craig Lang

In his complaint Lang alleges that he was falsely arrested by Defendant Resseguie. (ECF No. 1 at PageID.3). With respect to these claims, Plaintiff makes no allegations against any other Defendant. Plaintiff has already dismissed his claims against Defendant Resseguie, however. (ECF No. 49, 59). The Court further notes that Plaintiff's arrest was not improper as there existed probable cause to support such.

Plaintiff was arrested for assault and battery. Defendant Geik testified that after arriving at the scene of the disturbance he spoke with a Mr. Robeson who alleged that Plaintiff had kicked him in the chest. (ECF No. 84-15 at PageID.846-47). Defendant Schipper testified that he spoke with Plaintiff, who acknowledged kicking Mr. Robeson. (ECF No. 80-4 at PageID.352). Plaintiff himself conceded that he kicked Robeson. (ECF No. 80-7 at PageID.369).

Under Michigan law, assault "may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Starks*, 701 N.W.2d 136, 140 (Mich. 2005). Battery is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Ibid.* The aforementioned evidence constituted a sufficient basis to arrest Plaintiff for assault and battery. While Plaintiff appears to assert that he acted in self-defense, such is neither an element of assault and/or battery and is not evident from the present record. Accordingly, to the extent Plaintiff's complaint is interpreted as asserting claims of false arrest or false imprisonment against any Defendant other than Defendant Resseguie, the undersigned recommends that Defendants are entitled to summary judgment.

B.     Ryan and Branden Diamond

Plaintiffs Ryan and Branden Diamond both allege that they were arrested by Defendant Elzinga for ethnic intimidation. (ECF No. 1 at PageID.5). Defendants assert that Plaintiffs were also arrested for disturbing the peace. With respect to these claims, Plaintiffs make no other factual allegations against any other Defendant. To the extent, therefore, that Plaintiff's complaint is interpreted as asserting claims of false arrest or false imprisonment against any Defendant other than Defendant Elzinga, the undersigned recommends that such claims be dismissed. The Court further concludes, however, that Plaintiffs' claims against Defendant Elzinga should go forward.

Defendant Geik testified that Plaintiffs "gave specific threats to the group that was in front of 1013 East Crosstown using the nigger word and threats of violence." (ECF No. 80-5 at PageID.357). Specifically, Geik testified that Plaintiffs yelled "we will burn your fucking house down,

you nigger or niggers, we're going to burn your house down tonight." (ECF No. 80-5 at PageID.357). This is supported by Defendant Denharder's testimony. (ECF No. 80-2 at PageID.332-36). According to Denharder, Plaintiffs yelled:

> Wait till tonight niggers.  We're gonna fuck you up.  You're dead.
> You're all dead.

(ECF No. 80-2 at PageID.332-36).

Plaintiffs, however, testified that they did not make any racial comments or racially-based threats against anybody on the day in question. (ECF No. 84-4 at PageID.520-24; ECF No. 84-6 at PageID.537-39). Plaintiff Ryan Diamond further testified that prior to being arrested the only comment or statement he made was to ask one of the officers why his uncle was being arrested. (ECF No. 84-4 at PageID.523). Plaintiff Branden Diamond further testified that he never even exited his residence until he was arrested. (ECF No. 84-6 at PageID.538-39). Interpreted in a light most favorable to the non-moving party, Plaintiffs' testimony is sufficient to create a genuine factual dispute as to whether there existed probable cause to arrest Plaintiffs for ethnic intimidation or disturbing the peace. The Court is not persuaded by Defendants' assertion that the audio/video evidence they submitted advances their cause. First, there is no audio evidence of anybody engaging in ethnic intimidation or using racial slurs. Second, even if the Court assumes that there exists audio evidence that would support a charge of disturbing the peace, there is no evidence establishing that either Plaintiff Ryan Diamond or Branden Diamond are the individuals speaking. Accordingly, the undersigned recommends that Defendant Elzinga's motion for summary judgment be denied as to Plaintiffs' false imprisonment and false arrest claims.

      C.      Kathy Lang

Plaintiff alleges that she was falsely arrested by Defendant Hensell on or about July 15, 2015.[1] (ECF No. 1 at PageID.6). With respect to this claims, Plaintiff makes no other factual allegations against any other Defendant. Accordingly, to the extent that Plaintiff's complaint is interpreted as asserting claims of false arrest or false imprisonment against any Defendant other than Defendant Hensell, the undersigned recommends that such claims be dismissed.

As for Plaintiff's claims against Defendant Hensell, the record reveals that Plaintiff was arrested on July 16, 2013, for Using Emergency Telephone Service for Unauthorized Purpose. (ECF No. 80-16 at PageID.416-20). Plaintiff pleaded guilty to this charge on November 14, 2013. (ECF No. 80-16 at PageID.416-20). By pleading guilty, Plaintiff has waived any claim that her arrest was not based on probable cause. *See, e.g., People v. Gleese*, 1997 WL 33344847 at *1 (Mich. Ct. App., June 24, 1997) ("[a]n issue of whether probable cause existed to arrest a defendant is waived by a guilty plea"). Accordingly, the undersigned recommends that Defendant Hensell is entitled to summary judgment.

**II.**        **Illegal Search and Seizure** (Count II)

Plaintiffs Craig Lang, Kathy Lang, Branden Diamond, and Ryan Diamond assert that they were subjected to an illegal search and seizure, in violation of the Fourth Amendment, by virtue of their arrest without probable cause.

---

[1] The asserted date, July 15, 2015, is almost certainly a typographical error, as such post-dates the filing of Plaintiff's complaint. As the record reveals, the events resulting in Plaintiff's arrest occurred on July 1, 2013, and she was arrested on or about July 15, 2013. (ECF No. 80-16 at PageID.416-20). Accordingly, the Court has interpreted Plaintiff's claim as asserting that she was falsely arrested on July 15, 2013.

Just as above, Plaintiffs' claims hinge on whether there existed probable cause to support their arrest. *See, e.g., Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433, 452 (6th Cir., Aug. 26, 2011). Probable cause to justify an arrest "means facts and circumstances withing the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Ibid*. Whether there existed probable cause to support an arrest is "typically a jury question, unless only one reasonable determination is possible." *Rothhaupt v. Maiden*, 144 Fed. Appx. 465, 469 (6th Cir., July 20, 2005).

### A. Craig Lang

Plaintiff alleges in his complaint that he was arrested by Defendant Resseguie. (ECF No. 1 at PageID.3). With respect to this claim, Plaintiff makes no other factual allegations against any other Defendant. Plaintiff has already dismissed his claims against Defendant Resseguie, however. (ECF No. 49, 59). Accordingly, the undersigned recommends that Plaintiff's Fourth Amendment claim be dismissed. In the alternative, the Court finds that because there existed probable cause to arrest Plaintiff, for the reasons discussed above, Plaintiff's arrest was not improper or illegal. Accordingly, the undersigned recommends, in the alternative, that Defendants are entitled to summary judgment as to Plaintiff's illegal search and seizure claim.

### B. Ryan and Branden Diamond

As noted above, Plaintiffs Ryan and Branden Diamond both allege that they were arrested by Defendant Elzinga and, with respect to these claims, Plaintiffs make no other factual allegations

against any other Defendant. Accordingly, the undersigned recommends that Plaintiffs' Fourth Amendment claims be dismissed as to all Defendants save Defendant Elzinga. However, for the reasons discussed above, the Court finds that there exists a genuine factual dispute as to whether Defendant Elzinga had probable cause to arrest Plaintiffs. Accordingly, with respect to Plaintiffs' Fourth Amendment claims against Defendant Elzinga, the undersigned recommends that Defendant Elzinga's motion for summary judgment be denied.

    C.    Kathy Lang

As discussed above, Plaintiff has waived any claim that her arrest was not based on probable cause. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on this claim.

**III.**    **Excessive Force**  (Count I)

    A.    Craig Lang

Plaintiff Craig Lang asserts that Defendant Resseguie subjected him to excessive force immediately following his arrest by detaining him with "excessively tight handcuffs" and, furthermore, by slamming him into a vehicle. As previously noted, Plaintiff's claims against Defendant Resseguie have already been dismissed. Accordingly, the undersigned recommends that Plaintiff's excessive force claims be dismissed.

B.     Ryan Diamond

Plaintiff alleges that Defendant Elzinga "unnecessarily and without any justification placed excessively tight handcuffs on [his] wrists," thereby subjecting him to excessive force. Plaintiff further alleges that Defendants Schipper, Dahlinger, Denharder, and Geik violated his rights by failing to intervene on his behalf to prevent Defendant Elzinga's unlawful conduct.

Claims that a police officer employed excessive force during the course of an arrest are analyzed under the Fourth Amendment's reasonableness standard. *See Schreiber v. Moe*, 596 F.3d 323, 331-32 (6th Cir. 2010). The Fourth Amendment "prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Getz v. Swoap*, 833 F.3d 646, 654 (6th Cir. 2016) (citation omitted). To prevail on this claim, Plaintiff establish that: (1) he complained that the handcuffs were too tight; (2) Defendant ignored these complaints; and (3) Plaintiff suffered a physical injury caused by the too tight handcuffs. *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015).

Plaintiff testified that he did not complain that his handcuffs were too tight until he arrived at the police station. (ECF No. 84-4 at PageID.524-25). According to Plaintiff, Defendant Elzinga responded, "give me a minute" and exited the room. (ECF No. 84-4 at PageID.525). Plaintiff further testified that Defendant Elzinga returned to the room "five to ten minutes" later at which point he simply removed the handcuffs. (ECF No. 84-4 at PageID.525). Plaintiff alleges that the placement of handcuffs caused a scab on his arm to be ripped off. (ECF No. 84-4 at PageID.526).

Defendant Elzinga has submitted a videotape of his interaction with Plaintiff at the police station. (ECF No. 80, Exhibit 5). While this video is largely consistent with Plaintiff's recollection of events, it contradicts Plaintiff's version of events in one very important respect. The video clearly reveals the following:

    27:49   Plaintiff enters the room with Defendant.  Plaintiff asks Defendant to check his handcuffs.  Defendant clearly checks Plaintiff's handcuffs.  The video reveals nothing to suggest that Plaintiff's handcuffs were excessively tight or otherwise unreasonably applied.  After checking Plaintiff's handcuffs, Defendant instructs Plaintiff to sit down at a table.

    27:55   Defendant exits the room.

    28:01   Defendant re-enters the room and makes a telephone call from a desk located only a few feet from where Plaintiff is sitting.

    28:46   Defendant finishes his call and, while remaining at his desk, begins speaking with Plaintiff.  While speaking with Plaintiff, Defendant is entering information into a computer located on the desk.  During this time, Defendant's back is turned to Plaintiff.

    36:40   Defendant stops using the computer and sits across from Plaintiff at the table.

    37:21   Defendant removes Plaintiff's handcuffs.

(ECF No. 80, Exhibit 5).

        The videotape clearly shows Defendant checking Plaintiff's handcuffs.  This is consistent with Defendant's testimony. (ECF No. 84-16 at PageID.869). Defendant testified that when he checked Plaintiff's handcuffs, he observed that "they were properly put on, that there was a gap between his - his wrist and also the inner portion of the handcuff." (ECF No. 84-16 at PageID.869). This is consistent with the video evidence.  Defendant testified that he decided to leave Plaintiff's handcuffs on until he completed the booking process because performing those functions required him to work with his back to Plaintiff.  (ECF No. 84-16 at PageID.869).  This is likewise confirmed by the video evidence.  Finally, the video clearly reveals that from the moment Plaintiff sat down, after Defendant checked his handcuffs, until Defendant removed the handcuffs, Plaintiff was sitting comfortably and did not voice

or otherwise express any discomfort or issue regarding his handcuffs. With respect to injury, Plaintiff alleges that the application of his handcuffs caused the removal of a scab on his wrist. Plaintiff has submitted a photograph indicating the removal of a small scab from his wrist. (ECF No. 84-5 at PageID.530).

Viewing this evidence, even in a light most favorable to Plaintiff, compels the conclusion that Defendant Elzinga is entitled to summary judgment. While Plaintiff did complain that his handcuffs were too tight, Defendant clearly did not ignore Plaintiff's complaint. Moreover, there is no evidence to suggest that Plaintiff's handcuffs were, in fact, applied too tightly.

The alleged removal of a small scab is, at worst, a de minimis injury insufficient to maintain this claim. *See, e.g.*, *LaPine v. Caruso*, 2012 WL 1034024 at *8 (W.D. Mich., Feb. 13, 2012); *see also*, *Miller v. Sanilac County*, 606 F.3d 240, 252 (6th Cir. 2010). As another court succinctly observed, "[h]andcuffing is not meant to be pleasant, and it may certainly be uncomfortable, and even to a certain extent painful." *Mason v. Adams*, 2007 WL 162192 at *5 (E.D. Mich., Jan. 17, 2007). Accordingly, if the alleged injury resulting from an allegedly excessive handcuffing is "minimal or nonexistent, then the force creating it must be minimal and, therefore, not excessive." *Id.* at *4 (citation omitted).

Moreover, Defendant's decision to leave Plaintiff in handcuffs for a brief period of time while he completed the booking process, which necessitated that Defendant work with his back to Plaintiff, was completely reasonable under the circumstances. *See Miller*, 606 F.3d at 251 ("[t]he question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable"); *Fettes v. Hendershot*, 375 Fed. Appx. 528, 533 (6th Cir., Apr. 27, 2010) (not unreasonable for officers to delay loosening an arrestee's handcuffs until completion of "the short, ten-

minute transport to the police station"). As for Plaintiff's claim that Defendants Schipper, Dahlinger, Denharder, and Geik failed to intervene to prevent Defendant Elzinga's unlawful conduct, such is without merit because Defendant Elzinga did not violate Plaintiff's right to be free from excessive force. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's excessive force claim.

**IV.        Malicious Prosecution**  (Count III)

Plaintiffs Craig Lang, Kathy Lang, Branden Diamond, and Ryan Diamond assert that they were subjected to malicious prosecution in violation of their Fourth Amendment rights.

To establish malicious prosecution, Plaintiff must establish the following elements: (1) a criminal prosecution was initiated against Plaintiff and Defendants made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). Moreover, Plaintiff must demonstrate that Defendants acted with "some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Id.* at 655 ("even false testimony is not actionable as malicious prosecution unless deliberate - i.e., given with knowledge of, or reckless disregard for, its falsity").

A.     Ryan and Branden Diamond

While Plaintiffs Ryan and Branden Diamond can arguably satisfy three of the four aforementioned elements, they cannot establish that Defendants made, influenced, or participated in the decision to prosecute.

Plaintiffs argue that alleged evidence that Defendants harbor "a long standing bias and disdain toward Plaintiffs and were desperately looking for reasons to arrest them, whether or not the arrest was lawful," satisfies this element. The Court disagrees. Whether the decision to *arrest* Plaintiffs was informed by bias says nothing on the question whether Defendants made, influenced, or participated in the decision to *prosecute*. As the Sixth Circuit has observed, "to sustain a claim of malicious prosecution, the Plaintiffs were required to present some evidence that the impact of [Defendants'] misstatements and falsehoods in [their] investigatory materials extended beyond the Plaintiffs' initial arrest and ultimately influenced the Plaintiffs' continued detention." *Sykes v. Anderson*, 625 F.3d 294, 316 (6th Cir. 2010).

Plaintiffs cite to and rely on this very passage, but fail to note that the Sixth Circuit made quite clear that a plaintiff must present evidence sufficient to make the causal connection between the officers' alleged "misstatements and falsehoods" and the subsequent decision to prosecute. *See Id.* at 315-16 ("the officer's action must have influenced" the decision to prosecute); *see also*, *Phat's Bar & Grill v. Louisville County Metro Government*, 918 F.Supp.2d 654, 661 (W.D. Ky. 2013) ("Plaintiffs must demonstrate that Defendants "participate[d] in a way that aids in the decision [to prosecute], as opposed to passively or neutrally participating"). On this question, Plaintiffs have failed to identify any evidence. On the other hand, Defendants have submitted the testimony of Defendant Dahlinger who asserted that the decision to prosecute was made by the prosecutor's office without the involvement of

the police. (ECF No. 80-12 at PageID.393-97). Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to the malicious prosecution claims asserted by Plaintiffs Ryan Diamond and Branden Diamond.

        B.      Craig Lang and Kathy Lang

The claims for malicious prosecution asserted by Plaintiffs Craig Lang and Kathy Lang fail for the reasons articulated in the preceding section, as well as because, as discussed above, there existed probable cause to effect their arrests. The undersigned, therefore, recommends that Defendants are entitled to summary judgment as to the malicious prosecution claims asserted by Plaintiffs Craig Lang and Kathy Lang.

**V.**      **Failure to Train** (Count IV)

Plaintiffs Craig Lang, Ryan Diamond, and Branden Diamond previously dismissed their failure to train claim against Defendant City of Kalamazoo. (ECF No. 66).

Plaintiff Kathy Lang alleges that the City of Kalamazoo "permitted customs and/or policies" that caused her to suffer violations of her constitutional rights. To prevail on this claim, Plaintiff must prove that her injuries were caused by a City of Kalamazoo policy or custom. *See Ellis v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Plaintiff's claim fails for two reasons. First, as discussed herein, Plaintiff has suffered no violation of her rights. Second, Plaintiff has presented absolutely no evidence that any injury she may have suffered was caused by a City of Kalamazoo policy or custom. Accordingly, the undersigned recommends that the City of Kalamazoo is entitled to summary judgment on Plaintiff Kathy Lang's failure to train claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 83), be **granted in part and denied in part**. Specifically, the undersigned recommends that save for the false arrest and false imprisonment claims asserted by Plaintiffs Ryan Diamond and Branden Diamond against Defendant Elzinga, Defendants' motion for summary judgment be granted or Plaintiffs' claims be dismissed, as detailed herein.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  June 30, 2017

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge